1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

THE SUNRISE TRUST and SUSAN
KING,

              Plaintiffs,

v.

MORGAN STANLEY & CO. INC., et
al.,

              Defendants.

2:12-CV-944 JCM (PAL)

**ORDER**

Presently before the court is the matter of *The Sunrise Trust et al v. Morgan Stanley & Co., Inc. et al* (case no. 2:12-cv-00944-JCM-PAL). Plaintiffs filed a petition to vacate an arbitration award (doc. # 1) and a memorandum in support of petition to vacate an arbitration award (doc. #12). Defendants filed a brief regarding judicial review of the arbitration award (doc. # 14), and plaintiff filed a reply (doc. # 16). Additionally, defendants filed a motion to confirm the arbitration award. (Doc. # 15). Plaintiff filed a response (doc. # 17), and defendants filed a reply (doc. #18).

**I.     Background**

The factual events leading up to the arbitration and the arbitration proceedings are both relevant background materials to this court's order.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

*A.    Factual Background*

There are two named plaintiffs in this case - The Sunrise Trust and Susan King ("Ms. King").[1] Ms. King was diagnosed with ovarian cancer in early 2005. (Doc. #12). Ms. King decided to establish a trust to provide for her teenage son in the event the cancer became terminal. (*Id.*). On October 7, 2005, Ms. King created a trust with the following relevant parties: Ms. King as settlor; Allen Spaulding ("Mr. Spaulding") as trustee; James Winterroth ("Mr. Winterroth") as first successor trustee; Ms. King as beneficiary, and; in the event of Ms. King's death then her son ("Daniel") would become the principal beneficiary. (Doc. # 14, Bridwell Declaration, Attachment 1, Exh. 4).[2] Mr. Spaulding, acting as trustee, then opened an account with defendant Morgan Stanley & Co., Inc. ("Morgan Stanley") in the name of The Sunrise Trust.

Ms. King then transferred approximately $150,000 into The Sunrise Trust account with Morgan Stanley. (Doc. # 12). Beginning in 2008, Mr. Spaulding began to make withdrawals from The Sunrise Trust account. By early 2009, Mr. Spaulding had misappropriated substantially all of the account funds and diverted them for his personal use.

Mr. Spaulding was arrested and pled guilty to felony theft in a state court proceeding for his conduct as trustee to The Sunrise Trust. (Docs. ## 12 & 14). The state court sentenced Mr.

[1] Ms. King is the settlor and the principal beneficiary of the trust. (Doc. # 14, Bridwell Declaration - Attachment 1, Ex. 4). Ms. King was not the trustee. (*Id.*). However, Ms. King represented the trust in the arbitration proceedings with defendants. 9 U.S.C. § 10(a) mandates that only a party to the arbitration may seek judicial review of an arbitration reward. Defendants argue, among other things, that Ms. King does not even have standing to bring this lawsuit for judicial review of the arbitration proceeding because Ms. King was not a party to the proceeding. Defendants argue that The Sunrise Trust, as claimant in the arbitration proceedings, was the party to the arbitration proceeding. Plaintiffs' filings do not clearly distinguish between Ms. King and The Sunrise Trust. The court will construe all claims and arguments asserted by plaintiffs as made on behalf of The Sunrise Trust, who undeniably may bring this suit as a party to the arbitration proceeding.

[2] Plaintiff alleges to have signed transfer on death forms on October 27, 2005, which superceded the trust. However, nothing in the record proves the existence of the alleged transfer on death forms. The only authenticated evidence regarding the trust was provided by defendants in their motions that clearly demonstrates Ms. King created The Sunrise Trust and made Mr. Spaulding the trustee. Her signature is clearly affixed to the document. (Doc. # 14, Bridwell Declaration - Attachment A, Exh. 4).

1    Spaulding to four to ten years imprisonment and restitution in the amount of $136,415.  (Doc. # 14).

2          *B.  The Arbitration Proceedings*

3          The Sunrise Trust and Morgan Stanley account agreement included a provision whereby

4    disputes related to the account would be arbitrated before the Financial Industry Regulatory

5    Authority ("FINRA").  (Docs. ## 12 & 14).  On January 14, 2010, The Sunrise Trust submitted the

6    dispute to arbitration with FINRA against Morgan Stanley and Timothy McElroy ("Mr. McElroy").

7    (Doc. # 14).  Mr. McElroy was the Morgan Stanley representative for The Sunrise Trust account.

8    (Doc. # 12).  When filing the arbitration dispute, The Sunrise Trust "agree[d] to abide by and

9    perform any award(s) rendered pursuant to this Submission Agreement."  (*Id.* at Attachment 1, Exh.

10   6 ¶ 4).  On February 8, 2010, The Sunrise Trust filed its statements of claims and alleged breach of

11   fiduciary duty and negligence on the part of defendants.  (Doc. # 14).

12         The arbitration panel set the hearings dates for April 5-7, 2011.  (Doc. # 14).   The panel

13   granted The Sunrise Trust's first request for postponement and rescheduled the hearing to commence

14   on February 21, 2012.  (Doc. # 14).  Beginning in 2010, and continuing through the arbitration

15   proceedings, Ms. King suffered a series of serious physical setbacks.  (Doc. # 12).  Further, two

16   attorneys representing The Sunrise Trust in the arbitration proceedings withdrew, and Ms. King fired

17   a third attorney.  (Doc. # 14).

18         On February 15, 2012, six days prior to the hearing, The Sunrise Trust requested a second

19   postponement because of the deterioration of Ms. King's health.  (Doc. # 14).  At the time of this

20   request, Ms. King was still represented by counsel.  (*Id.*).  On February 16, 2012, the very next day,

21   the arbitration panel declined to postpone the hearing a second time stating:

22         "This is the second time the Claimant (The Sunrise Trust) has ask [sic] for a delay
           within days of the scheduled hearing.  There are far too many people who are on the
23         witness list and expected to attend.

24         The hearing will proceed and we will make arrangements for Ms. King's testimony
           at a later date.  Again, Ms. King is not the Claimant in this case and as a witness
25         would not be attending but a short period during the five-day hearing anyway."

26
27   (Doc. # 14, Bridwell Declaration - Attachment 1, Exh. 8).  On February 17, 2012, Ms. King

28   informed FINRA that she would be appearing at the hearing on behalf The Sunrise Trust.  (Doc. #

James C. Mahan
U.S. District Judge                                     - 3 -

14).  Her third attorney officially withdrew on February 20, 2012.

A full and fair hearing ensued.  On March 8, 2012, the arbitration panel issued its award and made certain factual findings.  (Doc. # 14, Bridwell Declaration, Attachment 1, Exh. 3).  The panel made the five following findings by way of explanation of its award.

1. Susan King, the grantor, hired and appointed Allen Spaulding to be the trustee of the trust. Ms. King gave Mr. Spaulding full authority to administer and invest the assets of the trust.

2.  In October 2005, Mr. Spaulding opened an account with Morgan Stanley & Co. Incorporated in the name of The Sunrise Trust.  He was the sole account holder.  Mr. Spaulding misappropriated money from the trust.  Found guilty, Mr. Spaulding was sentenced to prison and ordered to repay the trust.

3. Claimant attempted to prove that respondents had a legal duty to monitor Mr. Spaulding. The panel found that Mr. Spaulding, not the respondents, had a fiduciary duty to the trust and Ms. King.

4.  Claimant's claims against respondents are dismissed as they owed no legal duty to claimant to monitor Mr. Spaulding's failure to administer the trust assets.

5.  Claimant failed to state claims upon which relief could be granted.

*Id.*  Finally, the award itself consisted of the following: (1) claimant's claims are dismissed with prejudice in their entirety; (2) all references to the arbitration should be expunged from respondent Mr. McElroy's records; (3) the claims by claimant are factually impossible or clearly erroneous; (4) Mr. Spaulding, on his own, looted the trust; and, (5) Ms. King went after respondents in the arbitration proceedings knowing that she would probably not be able to recoup the full amount of lost trust assets from Mr. Spaulding.  *Id.*  Plaintiff then filed suit in this court seeking to vacate the arbitration award.

## II.   Legal Standards

Two legal standards merit a brief mention - statutory grounds for vacating an arbitration award and the standard of review a district court should employ when considering a motion to vacate an arbitration award.

**James C. Mahan**
**U.S. District Judge**

A.  *Federal Arbitration Act*

9 U.S.C. § 10(a) of the Federal Arbitration Act ("FAA") permits a court to vacate an arbitration award in four explicitly stated instances.  Plaintiff moves to vacate the award under two of the justifications provided in the statute.  (Doc. # 12).  The relevant sections of the statute, 9 U.S.C. 19(a)(3) & (4), state that a court may vacate an arbitration award upon application of any party to the arbitration:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(3) & (4).  Plaintiff moves this court to vacate the arbitration award pursuant to these sections.

B.  *Standard of Review of Arbitration Panel Awards*

It is very well established that a court's review of an arbitration award is very limited.  "Under the FAA, [] the reform of arbitration awards, including the severe remedy of vacatur, is limited by those grounds established by Congress in the [FAA]."  *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 647 (9th Cir. 2009); *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 798 (8th Cir. 2004) ("When reviewing an arbitral award, courts accord an extraordinary level of deference to the underlying award itself. . . ."); *ARW Exploration Corp. v. Aguirre*, 45 F. 3d 1455, 1462 (10th Cir. 1995) ("In fact, the standard of review of arbitral awards is among the narrowest known to the law."); *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1253-54 (7th Cir. 1994) ("[W]e will set aside an arbitrator's decision if in reaching his result, the arbitrator deliberately disregards what he knows to be the law."); *Wall Street Assocs, L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 848 (2d Cir. 1994) (noting "the FAA's strong presumption in favor of enforcing arbitration awards.").

James C. Mahan
U.S. District Judge

- 5 -

1    This court's review of the award is narrow indeed.  "Congress had good reason to preclude

2    more expansive federal court review."  *Kyocera Corp v. Prudential-Bache Trade Servs, Inc.*, 341

3    F.3d 987, 998 (9th Cir. 2003).  "Broad judicial review of arbitration decisions could well jeopardize

4    the very benefits of arbitration, rendering informal arbitration merely a prelude to a more

5    cumbersome and time-consuming judicial review process."  *Id.*

6    **III.   Discussion**

7    The court will address both of plaintiffs' arguments for vacating the arbitral award in turn.

8    The court sympathizes with plaintiffs' extremely unfortunate situation; however, the court ultimately

9    agrees with defendants' and will confirm the arbitral award.

10    *A.  Misconduct in Refusing to Postpone a Hearing Under 9 U.S.C. § 10(a)(3)*

11    Plaintiffs concede that a postponement of an arbitration hearing is not a right.  Plaintiffs

12    argue, however, that the panel knew of Ms. King's deteriorating health, that Ms. King would be

13    proceeding pro se, and that certain physicians wrote letters to the panel saying Ms. King's health

14    would affect her ability to cogently function.   According to plaintiffs, these factors together

15    warranted a postponement of the hearing.

16    Defendants counter by using actual case law to support their argument that the panel had a

17    perfectly acceptable reason or reasons to decline to postpone the hearing.  The court agrees with

18    defendants.

19    "Courts will not intervene in an arbitrator's decision not to postpone a hearing if any

20    reasonable basis for it exists.  To constitute misconduct requiring vacation of an award, an error in

21    the arbitrator's determination must be one that is not simply an error of law, but which so affects the

22    rights of a party that it may be said that he was deprived of a fair hearing." *El Dorado Sch. Dist. No.*

23    *15 v. Cont'l Gas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001).

24    This standard is widely accepted in the federal courts. *See, e.g., Laws v. Morgan Stanley*

25    *Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006); *Scott v. Prudential Sec.*, 141 F.3d 1007, 1016 (11th

26    Cir. 1998) ("In reviewing an arbitrator's refusal to delay a hearing, we must decide whether there

27    was any reasonable basis for failing to postpone the hearing. . . ."); *Sheet Metal Workers Int'l Ass'n*

28

**James C. Mahan**
**U.S. District Judge**

1    *Local Union 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985); *PartnerWeekly,*

2    *LLC v. Viable Marketing Corp.*, No. 2:09-cv-02120, 2012 WL 1185673, at *3 (D. Nev. Apr. 9,

3    2012).

4            "Because one of the policy purposes behind the FAA is the expeditious resolution of

5    disputes, the arbitrator has wide discretion in deciding whether to grant or deny a requested

6    postponement." *PartnerWeekly*, 2012 WL 1185673, at *3. The Sunrise Trust, via retained counsel,

7    submitted a request for postponement six days prior to the scheduled hearing. The panel declined

8    citing the following reasons: the panel already granted a postponement previously; too many people

9    and witnesses had made arrangements to attend the hearing; Ms. King was not the claimant, but

10   rather, a single witness, and; the panel would make appropriate arrangements to receive Ms. King's

11   testimony at a later date. These are all reasonable justifications.

12           The panel's decision to proceed with the hearing as scheduled could not be said to have been

13   arbitrary. However, "even if an arbitrator's decision was arbitrary, the court may not vacate an

14   award unless that arbitrary decision so effects the rights of a party that it may be said that he was

15   deprived of a fair hearing. Specifically with respect to § 10(a)(3), the party seeking to vacate the

16   award must show the arbitrator's refusal to stay the proceedings prejudiced him." *PartnerWeekly*,

17   2012 WL 1185673 (citing *El Dorado*, 247 F.3d at 848).

18           At the hearing, Ms. King made an opening statement, presented evidence, and called and

19   examined witnesses. Plaintiffs do not articulate a single reason why the panel's decision not to

20   postpone, even if it was arbitrary, would have prejudiced plaintiffs. To the extent plaintiffs'

21   argument is that Ms. King's fragile health compromised the hearing, it was Ms. King that informed

22   the panel mere days prior to the hearing that she would represent the trust in lieu of her third hired

23   attorney.[3] The court finds that the panel was not guilty of any misconduct under 9 U.S.C. § 10(a)(3).

24   _____

25           [3] Plaintiffs argue that Ms. King was in failing health leading up to the hearing and proceeding
     pro se. This does not make the panel's decision to proceed with the hearing arbitrary. At the time
26   the panel made its decision the panel was fully aware of Ms. King's health issues, the panel stated
     it would make accommodations to hear her testimony, Ms. King was represented by counsel, Ms.
27   King was only scheduled to be a witness at the hearing. Further, it was Ms. King's decision to
     appear pro se and represent the trust instead of her attorney after learning of the panel's decision not

James C. Mahan
U.S. District Judge

- 7 -

B. *Exceeding Powers Under 9 U.S.C. 10(a)(4)*

Next, plaintiffs essentially argue that the total outcome was incorrectly decided by the panel. Plaintiffs assert the award was wrong and that the panel did not reach the correct conclusion based on the facts.  Plaintiffs assert that the panel's decision was "irrational and predicated upon a manifest disregard for the law." (Doc. # 12).

Defendants counter that plaintiffs' arguments are really requests for the court to review the panel's factual findings and legal conclusions.  Defendants use case law to support their argument that this court is largely prohibited from such a review.  The court agrees.

Vacatur under section (a)(4) must meet a very high standard.  "It is not enough . . . to show that the panel committed an error–or even serious error." *Lagstein*, 607 F.3d at 641.  "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009).  "Arbitrators exceed their powers not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational or exhibits a manifest disregard for the law." *Lagstein*, 607 F.3d at 641.

I. *Completely Irrational*

"An award is completely irrational only where the arbitration decision fails to draw its essence from the agreement." *Id.* at 641.  "The question is whether the award is irrational with respect to the contract, not whether the panel's findings of fact are correct.  Whether or not the panels' findings are supported by the evidence in the record is beyond the scope of [this court]." *Id.* at 641.

Plaintiffs never even challenge the panel's authority under the contractual agreement or that the panel reached their conclusions in anything resembling an irrational manner.  The contractual agreement between The Sunrise Trust and Morgan Stanley clearly mandates arbitration in the event of a dispute.  Plaintiffs never assert to the contrary, nor could they.  Plaintiffs only disagree with the findings and the outcome.  This is the exact type of review not permitted by the court.

---

to postpone. That was her right and her choice.

James C. Mahan
U.S. District Judge

1

*ii. Manifest Disregard*

2   "Manifest disregard of the law means something more than just an error in the law or a

3   failure on the part of the arbitrators to understand or apply the law.  To vacate an arbitration award

4   on this ground, it must be clear form the record that the arbitrators recognized the applicable law and

5   then ignored it."  *Id.* at 641 (internal quotations and citations omitted).  "There must be some

6   evidence in the record, other than the result, that the arbitrators were aware of the law and

7   intentionally disregarded it."  *Bosack*, 586 F.3d at 1104-05.

8   The evidence presented to the court demonstrates precisely the opposite occurred. (*See* Docs.

9   # 14-15).  The panel knew of the agreement between The Sunrise Trust and Morgan Stanley and the

10  establishment of the trust making Mr. Spaulding the trustee.  The panel applied the correct law, and

11  the court's review must stop there.  The court finds that the panel did not exceed its authority under

12  section (a)(4).[4]

13  *C. Expunction*

14  The panel found that all of claimant's claims were factually impossible or clearly erroneous.

15  When this happens, the panel may recommend under FINRA Arbitration Code section 12805(c) the

16  expunction of all references to an arbitration in a broker's record.  In this case, the panel

17  recommended an expunction of this arbitration proceeding from Mr. McElroy's record.  As such,

18  the court orders that any reference of this arbitration proceeding should be expunged from Mr.

19  McElroy's record.

20  Accordingly,

21  IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that plaintiffs' petition to

22  vacate an arbitral award (doc. #1) be, and the same hereby is, DENIED.

23  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that defendants' motion to

24  confirm arbitration award (doc. # 15) be, and the same hereby is, GRANTED.

25

26

27   [4] Further, the court agrees with defendants that SEC rule 501(a)(8) does not even apply to the facts of this case.  That rule defines who qualifies as an accredited investor for the purpose of a "Reg D" offering.  It is off point and in no way warrants this court vacating the arbitration award.

28

James C. Mahan
U.S. District Judge

1        IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that the clerk of the court

2   shall enter final judgment in favor of DEFENDANTS.

3        DATED October 16, 2012.

4

5   _____

6   **UNITED STATES DISTRICT JUDGE**